Case Numbers 21-2780 and 2790, Mark Messing v. Provident Life and Accident Insurance Company. Argument not to exceed 15 minutes per side. Mr. Zelenak, you may proceed for the appellate. Yes, I have reserved one minute for rebuttal. Good morning and thank you for allowing us an opportunity to argue our case this morning. I'm Jay Zelenak, attorney for Mark Messing, who worked as a full-time personal injury for 20 years before being disabled by stress-induced mental illness. He was then, after that good long time period of work, he was then disabled and recognized as such for a long period of time. So I just want to make the point that this is a termination of benefit case of a well-established and well-documented case that, in fact, even had a prior litigation in 1999 and 2000, and that is in the briefs. In any event, the relief we seek is in order affirming the dismissal of the counterclaim that Provident brought in this case essentially for alleged fraud, and then number two, reversal of judgment, the district court's judgment in favor of Provident on the administrative record and entry of judgment in favor of my client Messing. To begin briefly with the counterclaim, in the district court we argued that there was no evidence of actionable fraud as claimed by Provident, that the plan does not provide for recovery or repayment, there's no provision in the plan for that in any event, that it was time barred under the terms of the plan, and also, third, that the counterclaim should be barred by unclean hands or the inequitable conduct of Provident. The district court judge agreed with us and dismissed the counterclaim, accepting two pieces, basically saying that there was no evidence of reliance or inducement provided by Provident, so one of the elements of fraud, and also that the plan didn't contain a recovery of any alleged overpayments, and so it was barred under Serebeth and Gilchrest, and there was no claim under 29 U.S.C. 1132-83. I think you can rest assured that we're familiar with all the procedural and factual background. You might want to just go to why you think the district court was mistaken as to its ruling against your client. Okay, on the administrative issue, and I apologize, I just wanted to make sure, my client did not defraud, he didn't defraud anyone, and that was lightly covered in the briefs. I wasn't worried about it. Oh, okay, thank you, sir, I appreciate that. I mean, I'm not ruling or anything, I'm just saying. No, understood, thank you. In terms of the trial court's heirs on the administrative record, so we've briefed the issue, but the trial court judge didn't interpret the fraud protectionist's plan correctly, and in terms of, you know, he accepted, or I'm sorry, she accepted the Providence 2018 sort of change in the way that your occupation is defined, rather than looking at whether, from sort of an occupational perspective, and whether he could, as a patient with his diagnosis and his experience, return to work as a trial lawyer, she instead accepted Providence, and I think this is an AJA of her opinion, that the question was much narrower, merely whether he could do certain tasks, discrete lists of tasks. Well, that was the list of tasks that your client put forward, I think, earlier in this whole process, as describing his occupation. I think that that's what Providence argued, I think that there was... As a factual matter, that was correct, though. I think he, in terms of a time, I think there's an attorney questionnaire that Providence prepared also, that, you know, they know what attorneys typically do, and... I mean, if you could just answer my question, I mean, he provided them with this list of functions which were, you know, which were part of his occupation at the time, when he first got... I don't think that he started with a white sheet of paper on that, I think the district judge even refers to... But did he provide them that list? And I'm trying to answer... At some point. Yes, he agreed that these were some of the lists, and I think we can all agree that writing briefs, traveling in a car, talking on the telephone, that type of thing, are part of being a lawyer. But on the claims forms, there are also submissions from his physician in a very long track pattern of establishing that the job requires a very sustained and concentrated ability on a prolonged basis. And so while he did agree, you know, they asked him to divide up what percentage of time he would spend on these tasks and that kind of thing. And, you know, his signature is on the page there and that kind of thing. There was some generation of that back and forth with the company, since they have some experience with what trial lawyers do too. But there was common ground, apparently, on what the functions of a trial lawyer are. That seems like, you know, if we're not going to belabor everything, that seems to be true here. I think that's true. It's just there was also common ground up until 2018 that you also had to have the ability to work under highly stressful... Well, I think everybody, you know, everybody understands that. But, you know, you do all this stuff on a full-time basis, it's stressful. Anyone who's practiced law knows that. Absolutely. And so I think that everyone did understand for the 1920 years that, yes, these are the tasks you talk on the phone, you travel, you know, you write briefs and so forth. But there is a lot more conflict in this business than average. There's very long hours, you have to perform at a very high level. So to, you know, I think it was a collaborative type of discussion. And I think that the duties were agreed by Provident, but also not just to these discrete tasks. And for example, of important note in this case, on appeal, we submitted affidavits from a host of attorneys talking about the fact that they didn't think back in 99 he could satisfy the ethical responsibilities under the rules of professional conduct, and they still don't. And I think that's very important because I don't think it can be disputed that one of the to comply with those rules of ethics. Now was it on the discrete list? Okay. But the lawyers, I really see is beside the point. I mean, the occupant, the duties of a lawyer are pretty much common ground here. That's the only thing the lawyers can speak to. They can't speak to his psychological ability to withstand, I think as his own treater, Dr. normal stress. So the lawyers, I mean, speaking for myself, they seem to be beside the point. I mean, it seems like you're disagreeing with the conclusions of, I guess it was Dr. Lemming. Yes. Who examined your client for two and a half hours, produced an 11 page report and said that he could function as a lawyer. And then your expert produced a two page report, which seemed a big conclusory to be candid. And your expert disagreed and said that he would, they both just spoke in terms of the work of an attorney, not this sort of more elaborate description of full-time attorney. So, I mean, am I correct in saying it kind of boils down to, you know, whether your expert was more persuasive, I guess, than the other expert. I don't think that's quite true because for a couple of reasons, first of all, Dr. Lemon, the company's doctor, he didn't actually say, you know, affirmatively opine that first of all, that he knew what the definition under the policy was, what this occupation actually requires, or affirmatively say he can do this job. And in his opinion and discussion, he talked with Messing and, you know, Messing indicated that he was a trial lawyer and he asked him, well, why don't you do some other type of law? And then he ends up in his, at the end, he doesn't say he can go back to full-time trial law. He says, well, I don't see any objective reason he couldn't, which is a little short of saying he can, and it's way short of saying he can do full-time trial law. It's like saying I don't think he's disabled as opposed to saying I think he is able, so to speak. I think there's a distinction, but I do think that the bigger one is he, with it right there in front of him, and this is something that the company should be telling him. I mean, after 20 years, why are they not giving him the doctor? I mean, if you're looking for a sound independent medical evaluation, why are you not telling him this is a highly stressful occupation? We want to know if he can do, they didn't even give him the district duties task list, but they didn't give him any guidance whatsoever. They didn't give him any portion of the policy or anything else. The other thing to follow up on your question is the idea that Dr. Callahan, who is a treater's report was perfunctory or less thorough is wrong because, and we've briefed this a bit, but back in 1999, Dr. Callahan was a treater and he opined before the company accepted the claim on essentially a virtually permanent basis, I guess an 18 or 19 year basis. He opined at that time, this is the expert we submitted. He opined that he thought messing could practice some other form of law, for example, wills, trusts, and the like. He just never will be able to go back to the occupation he held at the time he became disabled of full-time trial law. So I think that the district court judge missed that and I also think gave way too much weight to this concept that Callahan's report is short when you consider the entire context and his history on the claim as a treater and submitting affidavits and taking that position 20 years ago. And then, and this is my argument on course of performance, they pay it for 20 years, recognizing that Messing's treater says he could do some other law. That I think is very powerful evidence that the parties are in agreement that his own occupation is the full-time trial law. And those are helpful points. I appreciate it. Dr. Franzen, I guess in Dr. Franzen's last sort of evaluation, and I'm just inviting you to correct me if I'm getting the facts wrong. I thought that Dr. Franzen, who treated him for a long time, said that his mild, or no, his major depressive disorder at that time was mild or minimal. It was a major depression disorder and it was recurrent, but it was minimal. Yes, in terms of its manifest symptoms on a day-to-day basis. But I think that what, and one other point about Dr. Franzen. I understand he's not being a trial lawyer. I do understand that. I'm just trying to understand the factual record. Yes, and on that point, since I started about fraud, I mean, understand that these big representations that Provident talks about, I mean, they're not part of the administrative record, but I want the court to be clear. This is one every other year where he is unpaid and helps a friend, you know. I get that. He's never earned another dollar working in law. Can I ask a question in that regard? For the question that you were arguing for most of, after being directed, the one you're arguing is one where we don't, where we only look at the administrative record, right? That's right. That's right, and I'm wondering if there's anything in the administrative record that deals with these instances of practicing law during the more recent period, and my understanding is there's one. Yeah. Is that correct? Now, why isn't that one of some substance for our purpose of this? The district court didn't rely on it, but I'm wondering whether we can rely on it. It's de novo, right? Yeah, that's right, and off the top of my head, I don't recall the exact point, but over time, he both tried to return to work, and there was discussion of him potentially returning to work. We're talking about this clipping that says, I was his lawyer. Is that in the administrative record? I believe it is, yeah. So there's something in the administrative record which shows that he was actually, to a limited extent at least, practicing law. Yeah, I think that was at a protest, something like that, yeah. What do you say about that? How much weight should we give to that? Well, I think that, like the other alleged fraud, it is, he was at a protest, and he spoke on behalf of somebody and said there was a relationship. They had discovery of all of his tax returns and, you know, all that. There has been no payments. He has not worked. He has no office. He closed it down on the direction of his doctor prior to this 19 years of agreed upon payment. So I see my time has elapsed, so. Sure. We'll hear from the closing counsel. Good morning, your honors. Andy Ponengla on behalf of Provident Life and Aspen Insurance Company. Your honors, in an ERISA claim from benefits, the claimant bears the burden of proof. The claimant has to come forward with evidence showing that he or she is disabled under the terms of the policy. The plan or the insurer does not bear the burden of proof. We're not to prove the negative. Okay, the burden is on the claimant. But the insurance company acceded to his contention that he was disabled for at least a little period of time and paid the once the benefits are provided, is there a point in time that the burden shifts back to the claimant to show that he continues to be disabled? How does that, I mean, maybe he was in remission for some period of time or tempted to go back to working and didn't work out and all of that, but once the company makes the determination that he's disabled, what happens thereafter? So the burden never shifts. I do agree with you, Judge Clay, that the fact that somebody is put on claim and stays on claim is a factor that can be considered. It's a piece of evidence, okay, but it does not shift the burden. Under the case law and under the policy, the burden is always on the claimant. But once the company determines that he's disabled, when is it his obligation or burden to come forward subsequently to demonstrate that he continues to be disabled? At what point in time should he have done that? In the claims review process, and two points here. First of all, a person's medical condition or psychological condition changes over time, right? You can get that, right? And what happened here was in 2018, he was on long-term review, and they only checked in on him once a year. But in 2018, they checked in on him and they checked in with Dr. Francine, his psychologist, and she said for the very first time, I'm not going to support this claim anymore. That's unusual, usually the truth. Yeah, so all she said was she wouldn't provide an opinion. Isn't that what happened? Right. In 2017, she said, I don't think you should go back to work. In 2018, she said, I'm not going to give that opinion anymore. Wasn't that after you came, so to speak, your client came to her, though, as opposed to her volunteering and saying, guys, just so you know, I'm not going to be, you know, supportive. So that's a little different. It's not like she was affirmatively saying, there's been a change, and I'm done. Well, there was a change in her position, because her position had been, but you're correct, Judge Kethledge, it was a routine check-in, an annual check-in. But when Dr. Francine says, I'm not going to opine that he can't return to work anymore, probably didn't stop there. They probably could have said, well, you don't meet your burden of proof, but they didn't stop there. They went and they hired an IME, Dr. Lemon, somebody who's been appointed by the Eastern District Commission and independently several times. This is an independent person from the University of Michigan, and that person spends two and a half hours. Well, he's not all that independent. He hired by the company. If you wanted somebody independent, you could have asked a court to appoint somebody. That's not the way these independent medical examinations work. Well, I'm just saying, if you wanted somebody truly independent, you could have done it differently. You described him as independent. He wasn't independent. He was paid by your company. He was paid, but not for the result. He was paid to conduct the examination. That's the way independent medical examinations are conducted. I'm not aware of any ERISA case where— Well, I'm not arguing about that. I'm just saying, if you wanted a truly independent opinion, you could have done it a different way. I'm not arguing for the rulemaking. If I may, Your Honor, I'll go back to my fundamental point, which is the burden of That's always the case. When we look at the medical evidence here, we have Dr. Franz Hain, who in 2018, for the very first time, said, I'm not going to find that he can't return to work anymore. We have Dr. Lemon, who spent two and a half hours, wrote an 11 and a half page report, and did an MMPI examination, said he's in remission. And we have Dr. Callahan on the other side, who's the only medical evidence on the other side. A page and a half report, no testing. And Dr. Callahan says, I agree, he's in remission. Dr. Callahan doesn't say, here's something Mr. Messiaen can't do. And I want to follow up on this, because— Is it your argument that the determination of disability, that that's to be ascertained based upon the evaluation of the three physicians, the three doctors, that we look at the three physicians, and that's how the determination is made? I'm assuming there's other evidence in the record, perhaps. But since you're focusing on the—deservedly on the physicians, is that where you think the decision has to be made? I think the question for the court is, did the claimant come forward and satisfy his burden of proof that he is unable to perform the material and substantial duties of his occupation? I acknowledge there are affidavits from attorneys, Dick Kaye, Fred Dilley, and Bill Jack, all of whom are fine people and fine lawyers. Another way to put that is that he has to come forward with evidence to show that his disability, which had been agreed to by the company, had not changed. So he has to—it's his burden then to show that his disability, his condition of disability, had not been improved upon somehow. I think he has to— Since you, the company, had previously agreed that he was disabled. Yeah, I think that's probably fair, Judge Clay. I mean, I think, again, that it's his burden to show what his medical condition is. It's not our burden. Maybe, I mean, and it might be the same point that Judge Clay just made, but, I mean, we're not going to look at this just with blinders on and say, okay, does Callahan's opinion overcome Leming's or vice versa? I mean, there is the history that he was hospitalized and, like, you know, seemed to have a very I do not dispute that. I do not dispute that the fact that he's on the plane is a factor, okay, but it's not dispositive. The fact that you're disabled at one period of time doesn't mean you're always disabled. Yeah, but, I mean, he's not working as a trial lawyer for 20 years after that. And, you know, anyone who's sort of litigated cases knows sort of, you know, how stressful that really can be. It's not an easy job. It's like you're in a state of nature, you know, to some extent. And he's not practicing law. He's not, you know, trying cases and so on during that 20-year period. So, I mean, isn't there reason to have some concern that if he were put back in this environment or this situation in which, you know, from which he's been absent for 20 years, that these conditions might well come back? So risk of relapse can be disabling. However, in order for risk of relapse to be disabling, there has to be some evidence of risk of relapse. And, again, that burden is on the claimant. And there's nothing in the record that satisfies that burden here. Just to follow Judge Ketledge's point, the difficulty of somebody returning to practice as a trial lawyer after having been absent from that for 20 years and the difficulty of being able to do that competently, how does that factor into your thinking? So this is not an unemployment insurance policy, okay? It's a disability policy. And the language of the policy is you have to be unable to perform the material and substantial duties of your occupation due to sickness or injury, or maybe a skin disease. At what time does that attach? At the time that he's asserting that he's disabled or at the time that he originally filled out the form? At all times that he is seeking benefits, at all times. From the beginning of the disability? I mean, if it's duties, if it's the substantial duties of his job or something like that is the language, right? I don't know how I was trying to get it in front of me, but there's language like that in the contractual language, right? Right. So is it the substantial duties of someone at the time that he becomes disabled or is it this list that he fills out when he first asks for the insurance? You look at the occupational duties at the time the disability arose. All right. So at the time it arose, he was engaged in the practice of law that involved the ability to deal with the stress that we've all just been talking about. Is that right? That seems to be the difference in the language in the briefs. One says attorney, and an attorney takes depositions and an attorney writes briefs, and the other is saying an attorney who's a trial lawyer and a responsible trial lawyer who's subjecting himself to all of these stresses. But see, I don't think we dispute what his job duties are. We accept the notion that he was a full-time personal injury trial lawyer. That's fine. All right. We don't dispute that, but the question is- Well, all this focus on this list of 10 items seems to skirt over that. Well, because- And not being a real stress occupation. So every time one of the briefs says, oh, well, we have evidence that he could do all of his duties, they go back to that. And sure, I mean, it's pretty, I think a reasonable fact finder would say, yeah, he could do all those things. But if it's the substantial duties he had at the time that he became disabled, which were more than that in the sense that they were being able to endure all these stresses- Then the factual record starts to look a little bit in a different direction. And so every time, in your brief, you're always doing it one way, and in their brief, they're always doing it the other way. I'm trying to figure out what's the correct way. And you seem to be agreeing with them that the correct way is to look at the duties as they were when he became disabled, which included being able to subject yourself to the stress of trial advocacy. I don't think we have any dispute over what the relevant occupation of these are. Well, can you say what those are? Because it seems to me that's the thrust of the difference between the two of you. So you say there's no dispute, but how can you say that? I think- You always say it one way, he always says it the other way. I think that- Is that right? Am I reading these pages wrong? I mean, you always say one side says full-time trial lawyer litigating cases, and the other side says attorney. I don't think that's accurate, Judge Rogers, respectfully. And I really, I go back to what really the question is before the court for the trial court is, has the claimant come forward and produced evidence that would show I can't be a full-time personal injury lawyer because of X? And we have nothing on this record. This X is like, you know, stress and my reaction to stress. Right. Well, we all have stress at some point. Some of us can sympathize with you. Well, let me ask it like this, if you have an attorney who, a trial attorney who became disabled and then did not practice for 20 years, and he's trying to return to practice after a 20-year absence during an extended period of disability, would you be willing to hire such an attorney to represent you? Respectfully, Judge Clay, that's not a relevant question. Well, it's the question I'm asking. It's relevant if I want to know your answer. Well, I acknowledge that, Your Honor. But there's no question it would be hard to get back in the game after you've sat on the sidelines for 20 years. There's no doubt about that. But the policy asks the question of whether somebody is able to perform the material and substantive duties of their occupation due to sickness or injury. Not because you've been on the sidelines for 20 years, not because your skills have eroded, not because nobody hired you. Yeah. I mean, what constitutes acceptable performance? I guess that's part of the question here. Yeah. Showing up and going through the motions is one thing. Successfully executing the duties of a trial attorney might be something else. But whether you can do it in compliance with the rules of professional conduct for competence. If you can't do it because you don't have competence, that's unfortunate. But that's not due to sickness or injury, which is the question of the policy. Functioning without violating the rules of evidence and getting this bond, that doesn't necessarily say that you're functioning competently as a trial attorney. But again, the question of the policy is whether sickness or injury, whether you're unable to perform the duties of your occupation due to sickness or injury. Well, even, you know, I mean, but even if we kind of look at Judge Clay's question in those terms, if somebody hasn't practiced law for 20 years, now they have to go back. I mean, I think, wouldn't it be true that the difficulty of sort of resuming that and sort of catching up with sort of the state of the art, so to speak, wouldn't that probably add to the stress that a person would feel as they try to resume practicing law after 20 years? I'm sure it would be difficult and I'm sure it would be stressful. I mean, it sounds like it would be kind of, I mean, arguably it would be a nightmare. Yeah, I have no quarrel with the notion that if you're on the sidelines for 20 years, it's hard to get back in. I do assert to the court that's not the question that needs to be asked. Okay. Okay, thank you. Thank you. Any other follow-up? Thank you, Your Honor. Mr. Bordinga mentioned that Dr. Lemon issued an MMPI. I think the important thing about that is it says that my client is not malingering or misrepresenting like every MMPI he's been given over the years. It doesn't say anything about whether he's a risk of relapse and Lemon doesn't assert that. One thing that I do think that is very important about Lemon, and we pointed this out in the briefs, is the company did not give him any of the treating physician's records, not including her records from July immediately before he saw her. We did. When we filed an appeal, we submitted her records, which were not a withdrawal of, hey, this guy's good to be exposed to response, and he did not reply. The company got no reply from him about those records and the longstanding disability and exposure to stress issues that, candidly, he was not asked in the first instance by the company. And they then went to a file reviewer who simply recited, well, his report. He didn't address those issues either. He just says Lemon's report meets industry standards, which is something he had said in another case for the company. So I see my time is- Can I ask one question? I have a question about the cross appeal. You know, I'm troubled by all of these statements that I'm not practicing law when he's been practicing law repeatedly. Right, right. And I guess that was thrown out on the lack of reliance. Is that right? Yes, Your Honor. It was thrown out on lack of reliance and also because there's no provision in the plan that allows for repayment. Right. So if we assume that there's something in, if we assume that there's a technical basis for repayment, the standard would be whether you're going to require that the person lose his coverage because he did something that might have given the insurance company pause or do we have to show that, would the fact finder have to find that the insurance company would have terminated based on those? Yeah, I think- That's my question. Sure. I'm asking a technical question about what you would have to show. Absolutely. I think that they would have to show that it would make a difference. Make a difference. Make a difference as to what- Whether they pay benefits or not. Whether they would pay benefits. Yes. Of critical and- So you would have to show, whoever has the burden of proof, the issue is whether having received this stuff, they would have stopped the benefits or not based on those failures. Correct. Yes. I'm sorry. Yeah, go ahead. Well, I would just like to offer, one thing that we didn't cover as thoroughly as we did in our summary disposition motion and brief is the fact that there was no fraudulent misrepresentation because, and these are in the record below, but there was a prior- He said, I don't have any clients and I'm not practicing law. I mean, I read the transcript portion. I think that he's- Sounds like a misrepresentation to me. On the forms, I don't think so, Your Honor, because on the forms, a lot of the forms were asked, have you returned to work? And work means, in sort of both my understanding and also- Is that what you're relying on? Are you relying, because that doesn't seem to be what the district court was relying on. Sure. Sure. No, yes. She was relying on what the fraud claim was, was based on claims forms where there's a very little box over the years. And some of them say, have you returned to work? And he says over and over again, I'm never going to return to work, which is the understanding they all had. He did not have any intention or expectation- But there's a transcript. There's an emailed copy of the statement of the woman who was investigating this saying, he told me he's not taking clients and hasn't taken clients, whatever that language is. We never- Hasn't had any clients. Sure. It's kind of inconsistent with the record. Sure. The statement that I'm almost certain that you're referring to is in 2018, and the last one of these very rare things was years before that, so it was a true statement at the time. But again, when I- Is that what you rely on, is the truth of that statement? Yeah, at the time he made that? Sure. Okay. And well, I just, may I make just a brief pointer? Okay. The forms were returned to work, and then the others talked about the duties of your occupation. And the point is, by the time he was filling out those forms, it was very well established that he was very committed to the idea that his occupation was what he always said it was, and he had closed his office, and he was not doing it, and he never took any paying clients. I mean, we're talking about one every two years where he helped a friend. I mean, that is not practicing law or having an occupation, or working in the realm of the American economy. Thank you. Thank you. Thank you very much for your arguments, and the case is submitted. Thank you. Thank you. Bert may call the next case.